IN RE INDEPENDENT CONSOLIDATED SCHOOL DISTRICT
NO. 16, FILLMORE COUNTY.
EMIL OIAN AND OTHERS, APPELLANTS.[1]

March 19, 1954.

No. 36,213.

[1]Reported in 63 N. W. (2d) 543.

*Foley & Foley,* for appellants.
*Holst, Erickson, Vogel & Richardson,* for respondent.

KNUTSON, JUSTICE.

In May 1952, the county superintendent of schools of Fillmore county prepared a plat of certain school districts near Rushford, Minnesota, for the purpose of consolidating said school districts into Independent Consolidated School District No. 16 of Fillmore county. (In April 1952, a prior plat submitted by the superintendent after consultation with people in the area for and against the proposition was rejected by the state commissioner of education.) The plat was forwarded to the commissioner of education on May 20, 1952. The proposed area, a major portion of which was in Fillmore county, contained 39 25/32 sections of land and had a total assessed valuation of about $770,000. After the superintendent had submitted the plat, he requested that a small portion of two districts be added. The commissioner further enlarged the area proposed for consolidation by adding other districts or parts of districts so that the area proposed by him contained 65 ¾ sections of land, with an assessed valuation of $1,031,575.

When the commissioner returned the plat, he certified it to the county superintendent for submission to the voters residing in the area proposed for consolidation. The superintendent never officially filed the plat as returned by the commissioner for the reason that he did not approve of it, but he did call an election to vote upon the commissioner's plan after the presentation to him of a petition signed by the required number of freeholders. An election was held on July 23, 1952, at which the majority of the voters favored the proposed consolidation. On July 30, 1952, the county superintendent issued the final consolidation order. An appeal was taken to the district court by appellants, who are freeholders and taxpayers of the involved area, and on June 8, 1953, the district court ordered the consolidation affirmed and the appeal dismissed. The appeal to this court is taken from the district court's order denying ap-

pellants' motion for amended findings of fact, conclusions of law, and order for judgment or, in the alternative, for a new trial.

At the outset it should be understood that this consolidation did not involve the so-called reorganization act but is brought under and is governed by M. S. A. 122.18 to 122.22, as amended by L. 1951, c. 706. As far as here material, § 122.19 reads:

"* * * Before any steps are taken to organize a consolidated school district, the superintendent of the county in which the major portion of territory is situated, from which it is proposed to form a consolidated school district, shall cause a plat to be made showing the size and boundaries of the proposed district, the location of schoolhouses in the several districts, the location of other adjoining school districts and of schoolhouses therein, and the assessed valuation of property in the proposed district, together with such other information as may be required, and submit the same to the state commissioner of education, who shall *approve, modify or reject* the plan so proposed, and certify his conclusions to the county superintendent of schools." (Italics supplied.)

Section 122.20, as far as here material, reads:

"*After approval by the commissioner of education* of the plan for the formation of a consolidated school district, an election on consolidation shall be held upon presentation to the county superintendent of a petition or petitions asking for the formation of a consolidated school district *in accordance with the plan approved by the commissioner of education,* signed and acknowledged by at least 25 per cent of the resident freeholders of each school district all of the territory of which is included in the proposed consolidated school district and which district is maintaining only an ungraded elementary school or schools * * *." (Italics supplied.)

The scope of our review is limited by statute and our decisions construing it. In re Independent School Dist. No. 27, Hennepin County, 240 Minn. 257, 60 N. W. (2d) 617. With respect to the scope of our review we there said (240 Minn. 260, 60 N. W. [2d] 619):

"* * * This court, as well as the trial court, must limit its inquiry to a consideration of whether the action of the county board was arbitrary, oppressive, unreasonable, or fraudulent or based upon an erroneous theory of law."

The right of appeal here is governed by § 122.21, subd. 6, read together with § 122.32.

At a pre-trial conference it was stipulated that there was no issue as to whether the consolidation was for the best interests of the territory affected and the people residing therein; as to the sufficiency of the petition; or as to the irregularity of the election. In view of this stipulation the scope of our review is limited to a determination of whether the court misconstrued the word "modify" and whether there was the necessary approval of the commissioner of education preceding the election.

It is the first contention of appellants that the word "modify" does not permit the commissioner of education to add to the area proposed in the plat by the county superintendent of schools.

The word "modify" is a word that is difficult to definitely define and may have a variety of meanings depending upon the context in which it is used. 58 C. J. S., p. 840, defines the word as follows:

" 'Modify' is a transitive verb, having many meanings; it is a word general in use, with meanings that are not uncertain, but it must be interpreted in the light of the context in which it is used."

In our case of State ex rel. Stortroen v. Lincoln, 133 Minn. 178, 184, 158 N. W. 50, 52, in construing Minn. Const. art 4, § 33, which provides in part that the legislature shall not amend, extend, or modify any existing special or local law, we said:

"* * * The word 'modify' as here used must be construed as synonymous with 'extend' or 'enlarge,' * * *."

In Van Deusen v. Ruth, 343 Mo. 1096, 1101, 125 S. W. (2d) 1, 2, the court said:

"* * * The words 'modify' and 'amended' may have various meanings, but they must be interpreted in the light of the context in which they are used."

See, also, McGoldrick Lbr. Co. v. Benewah County, 54 Idaho 704, 35 P. (2d) 659.

Appellants rely upon Smith v. Ray, 83 Ohio App. 61, 72 N. E. (2d) 921. The facts in that case clearly are distinguishable from those in the case now before us. There, plaintiffs and other electors of the East Salem rural school district of Shelby county, Ohio, requested the transfer of a substantial part of the district to the adjoining Sidney city school district. The county board transferred the territory as requested and transmitted its plan of territorial organization to the superintendent of public instruction of Ohio. The Ohio statute permits the superintendent to modify the proposed plan for organization of school districts. However, the superintendent transferred the area to an entirely different school district. In holding that this was not a modification, the Ohio court said (83 Ohio App. 74, 72 N. E. [2d] 927):

"* * * The plan finally approved by the superintendent was a completely new and different plan and went beyond anything within the concept of the term 'modification.' The power to modify does not confer the power to destroy. * * * The superintendent has the authority to vary, limit, or restrict the application of the original plan submitted by the county board, but he cannot substitute a completely new plan."

We are of the opinion that the word "modify" as used in our statute does include the power to add to the area proposed in the original plat as well as to subtract therefrom. That does not mean that the power of the commissioner is unlimited or that he may change the proposal so as to constitute an entirely new plan. The trial court on appeal may always determine whether the action of the commissioner is against the best interests of the territory affected. M. S. A. 122.32. In this case, there is no evidence to show that the action of the commissioner was arbitrary, oppressive, un-

reasonable, or fraudulent. The issue of whether the action was for the best interests of the territory affected was withdrawn so there is nothing for us to pass upon as far as that issue is concerned. We are of the opinion that the commissioner did not exceed his authority in the modification of the plan proposed.

■ Appellants next contend that the plan was never approved by the commissioner. They contend that when the plan proposed by the county superintendent of schools is modified by the commissioner it must be sent back to the county superintendent, who must then accept the modification or take some further action on it. Just what action may be taken is not clear from appellants' brief. In its essence, appellants' contention apparently is that the county superintendent and the commissioner must agree on the plan before an election may be held. The statute does not so provide. Section 122.20 states that: "After *approval by the commissioner of education* of the plan," an election shall be held. (Italics supplied.) It gives the county superintendent no authority to approve or disapprove of the plan as modified by the commissioner. It must be evident that, when the commissioner modifies the plan submitted by the county superintendent, he has approved the modified plan. It would be absurd to hold that he must approve of that which he himself has done. It seems clear to us that once the county superintendent has submitted a proposed plat his function is completed; and, within the limitations prescribed by law, the commissioner then must proceed as the statute provides, either with an approval of the plat as it was prepared by the county superintendent, a rejection thereof, or a modification. If there is an approval, there must be an election upon the presentation of a proper petition. Conversely, if there is a rejection, there can be no election. However, if there is a modification and the plat is certified back to the county superintendent with such modification, it is our opinion that there must be an election, the same as if there had been an approval. After all, the people in the territory are left with a wide discretion in determining whether they wish to proceed upon the plan as modified. A petition must first be presented, signed by 25 percent of the resident freeholders of each school district in the territory included in

the proposed consolidation. An election must then be held in which a majority must vote in favor of the proposal before the consolidation becomes effective. In a sense, both the action of the county superintendent in preparing the original plat and the action of the commissioner of education in approving it or modifying it are in the nature of proposals to the freeholders. They in turn have the final decision as to whether such plan shall be adopted.

Appellants then contend that a legal plat was never filed. Much of their argument in this respect is answered in the foregoing paragraph, since the argument is based on the premise that the plat as modified was never approved. That the county superintendent did not so understand the matter at the time the election was held and at the time he prepared his final certificate is evident from his final certificate. It reads in part:

"WHEREAS, a Plat of the proposed consolidation of school districts numbered * * * has been filed with *and approved by the State Commissioner of Education,* as by law required, * * *." (Italics supplied.)

It is now claimed that the plat as modified was never filed by the county superintendent for the reason that he did not approve of it. However, he did proceed to call an election on the basis of the plat as modified and petitions based thereon and filed his certificate completing the consolidation. We are unable to find any jurisdictional defect as far as the plat is concerned under these circumstances.

Affirmed.