# ORIE BAKKEN AND OTHERS v. HELEN R. SCHROEDER AND OTHERS.

130 N. W. (2d) 579.

October 9, 1964—Nos. 39,252, 39,253, 39,254.

*Johnson, Johnson & Johnson,* for appellants.

*Henry N. Somsen, Jr., A. R. Mueller, William O'Connor,* and *Robert J. Berens,* for respondents.

ROGOSHESKE, JUSTICE.

This appeal from a judgment challenges the validity of a school consolidation proceeding.

By order of the county superintendent of schools, three adjoining common school districts in Brown County, designated as Nos. 2764, 2765, and 2767, were consolidated with Independent School District No. 83, embracing the city of New Ulm and adjoining lands. Resident freeholders from each of the common school districts involved appealed to the district court from the order of consolidation.

On May 2, 1961, the school boards of the three common districts passed and submitted to the county superintendent identical resolutions reciting that, while their respective boundaries were not contiguous with the New Ulm district, there existed no district intervening that maintained a secondary school and that it would be to their best interests if they were consolidated with the New Ulm district. Acting upon these resolutions, Mrs. Helen R. Schroeder, the county superintendent, prepared a proposed plat and supporting statement initiating the consolidation proceedings. On the morning of May 8, 1961, she delivered a sealed envelope containing a copy of the plat and supporting statement to the county auditor's office and later that day delivered the originals to the state commissioner of education. On the same day at 11 a. m., a petition to dissolve District No. 2765 and attach its territory to Consolidated School District No. 87, known as the Hanska district, was filed with the auditor. The dispute as to whether the dissolution petition was filed prior to the time of the filing of copies of the plat and supporting statement was resolved by the court's finding that the latter were in fact filed first.

The court also found that after the plat and supporting statement were submitted to the commissioner they were returned to the county superintendent with instructions to make additions and changes; that on June 28, 1961, the plat as modified was approved by the commis-

sioner; that on August 7, 1961, the board of the New Ulm district approved the plan for consolidation; and that, following petitions of the necessary resident freeholders of the common school districts, an election to vote upon the question of consolidation was scheduled to be held in those districts.

Upon claims of jurisdictional defects and substantial disregard of statutory provisions, an attempt was made to enjoin the election. The application for a temporary restraining order was denied, and the election held on August 28, 1961, favored consolidation by a vote of 122 to 65. Thereafter on September 1, 1961, the county superintendent issued the order of consolidation.

We believe that the questions raised by appellants' 18 assignments of error may be fairly summarized as follows: (1) Was there a proceeding pending to dissolve one of the districts involved at the time the plat was submitted to the commissioner? (2) Was the county superintendent's failure to file a complete and accurate plat and supporting statement such a substantial disregard of statutory requirements as to deprive the commissioner of jurisdiction to approve the plat? (3) Was there a district maintaining a secondary school intervening between the common and independent districts involved? (4) Did the failure of the commissioner of education to send a copy of the approved plat to the county superintendent and to the county auditor invalidate the election? (5) Finally, was the consolidation arbitrary and unreasonable because not in the best interest of the area affected?

Appellants' contention with regard to the first question raised is that a petition for dissolution of District No. 2765 was filed in the Brown County auditor's office prior in time to the filing of the plat for consolidation.

Appellants agree that this contention presents an issue of fact. From our review of the record we believe, and appellants so concede, that there is sufficient evidence to sustain the trial court's finding that the plat was filed prior to the petition for dissolution. We must therefore reject the contention that a petition for dissolution was on file prior to the filing of the plat. We deem it unnecessary to consider what effect the prior filing of a dissolution petition would have upon a

consolidation plan, although it appears that by virtue of Minn. St. 122.23, subd. 5, consolidation proceedings are intended to take precedence over any other action to change the boundary of any district included in an area proposed for consolidation. See, Common School Dist. No. 1317 v. Board of County Commrs. 267 Minn. 372, 127 N. W. (2d) 528; State ex rel. Helling v. Independent School Dist. No. 160, 253 Minn. 271, 92 N. W. (2d) 70.

The second issue is whether the plat and supporting statement as originally presented to the commissioner and filed with the county auditor were so incomplete and inaccurate that they did not vest the commissioner with jurisdiction to proceed or constitute a valid filing with the county auditor. What appellants appear to be contending is that the original plat and supporting statement were so deficient that there was no "submission" within the contemplation of § 122.23, subd. 4. Appellants further argue that when, if ever, the plat and supporting statement were finally corrected and completed so as to substantially comply with the statutes specifying what these documents shall show, it was after the dissolution petition had been filed and the latter action was therefore entitled to precedence.

Reading § 122.23, subds. 1 and 3(d), in conjunction with related provisions detailing the contents of the documents in question, it seems clear that it was intended by the legislature that the first procedural step essential to vest the commissioner with jurisdiction is the submission of a proposed plan for consolidation embodied in a plat and supporting statement which show that the proposed new district contains "at least 18 sections of land" and is "composed of contiguous areas unless an entire district is to be part of a district which maintains a secondary school and there is no district intervening which maintains a secondary school."[1] In our opinion, the legislature clearly intended

---

[1] This is the pertinent language found in Minn. St. 122.23, subd. 1. Section 122.23, subd. 3, provides: "A supporting statement * * * shall contain:

\* \* \* \* \*

"(d) A statement showing that the jurisdictional fact requirements of subdivision 1 are met by the proposal."

that when these facts appear from the documents submitted the commissioner is thereupon vested with the authority, and indeed the duty, to act upon the proposed consolidation.[2]

Although the commissioner's authority is not unlimited, we have held that he may modify the proposal by adding to or subtracting from the area proposed to be consolidated. In re Consol. School Dist. No. 16, 241 Minn. 454, 63 N. W. (2d) 543. Surely in a case of this kind he also has authority to correct inadvertent omissions or inaccuracies apparent from an examination of the documents and concerning facts which could be ascertained from public records.

From the facts before us it is clear that the plan as originally filed met the jurisdictional requirements of the statute unless appellants' contention that there are intervening districts maintaining secondary schools must be upheld.

It is true that the original plat and supporting statement contained a number of omissions and inaccuracies; namely, omission of the number designations of the adjoining and intervening common school districts and of the location of existing school buildings, incorrect boundary lines, and inaccurate areas and approximations of assessed values. If these defects are viewed most favorably to appellants, they appear as mere inadvertencies occasioned perhaps by careless or hasty preparation. The documents were returned to the superintendent shortly after they were received by the commissioner with express directions to insert the numbers of the adjoining and intervening districts. After she complied, on her own initiative she again secured the return of these documents to correct the boundary lines, the total acreage covered, and the assessed valuation to correspond to the public records. Significantly, as the court found, the documents and the copies on file in the auditor's office were brought into substantial compliance with the statutory requirements prior to the commissioner's approval and the holding of the election. Absent a showing of fraud or prejudice, we do not believe that the procedure followed can be held either to affect the validity of the documents or the time of

---

[2]See, State ex rel. Helling v. Independent School Dist. No. 160, 253 Minn. 271, 92 N. W. (2d) 70.

filing or to divest the commissioner of jurisdiction. Under the circumstances, it is reasonable to conclude that the superintendent made the corrections and modifications as the agent of the commissioner under his statutory authority to modify the proposal.

Appellants claim that two adjoining districts, each maintaining a secondary school, intervene.

It is clear from the language of § 122.23, subd. 1, quoted above, that an intervening school district maintaining a secondary school was intended to be a jurisdictional impediment to the commissioner's authority to act upon a proposed consolidation. The obvious purpose of the prohibition is to prevent common school districts from being consolidated with a noncontiguous high school district where a contiguous high school district is interjacent. Without such a prohibition common school districts could choose to become part of the independent or consolidated districts giving them the most beneficial tax rate or offering them the most favorable inducements for joining. It would create chaotic conditions with respect to transporting students, provoke intolerable competition between districts maintaining high schools, and encourage the raiding of territories for the purpose of enlarging taxable value without due regard for the best interests of the areas affected.

A small rectangular area in the southeast corner of District No. 2764, comprising 120 acres, juts into the Madelia school district and a small part of the Madelia district lies north of this area. Similarly, a small triangular patch of the Hanska district extends into the southern portion of District No. 2765. Both the Madelia and the Hanska districts maintain secondary schools, and appellants insist that both intervene between the common districts and the New Ulm district. While we have not previously interpreted or applied this statutory provision, the administrative interpretation of it is that there is an intervening district when the students from a common school district going to the location of the proposed consolidated school would have to pass through another district that maintains a secondary school. Cases that have defined the word "intervene" as meaning that which lies between, that which cuts off access, or that which separates serve

to do no more than state the commonly given dictionary meanings of the word. In our opinion, the word "intervene" as used in this statute relating to school consolidations was intended to have the distinct meaning employed by the commissioner. Accordingly, we hold that when there exists a contiguous school district maintaining a secondary school which separates or comes between the areas proposed for consolidation so that students from the common district attending school in the new district would be required to pass through the contiguous district, such a district intervenes.

In the case before us, there is no evidence whatsoever that either the bus routes or the regular travel of any student residing in any of the common school districts to be consolidated would have to pass through area which is a part either of the Hanska district or of the Madelia district. Thus, we must conclude that on the facts presented herein there was no intervening school district within the meaning of the statute.

Appellants' next contentions relate to the issue of whether the alleged failure of the commissioner to file a copy of the approved plat with the county auditor and to return the original copy of the approved plat to the county superintendent of schools invalidates the election. The trial court made no finding on the issue of whether the county auditor received a copy of the approved plat from the commissioner of education. It did find, however, that a copy of the letter from the commissioner to the superintendent informing her of his approval was sent to the auditor. The court also found that the superintendent received a copy of the approved plat, although not the original, and a letter informing her that the plat was approved. Even conceding that the county auditor did not receive a copy of the final plat with the commissioner's endorsement of approval, we do not believe it was such a defect in the procedure as to invalidate the election. So, also, with the failure to send the original plat back to the county superintendent. While this violated § 122.23, it cannot serve as a basis for invalidating the election. As we have repeatedly stated, postelection challenges to consolidation proceedings will not serve to invalidate the election unless there is proof of prejudice. The stat-

utory requirements are treated as directory rather than mandatory when the proceedings are challenged after the election.

"It is the general rule that, before an election is held, statutory provisions regulating the conduct of the election will usually be treated as mandatory and their observance may be insisted upon and enforced. After an election has been held, the statutory regulations are generally construed as directory and such rule of construction is in accord with the policy of this state, which from its beginning has been that, in the absence of fraud or bad faith or constitutional violation, an election which has resulted in a fair and free expression of the will of the legal voters upon the merits will not be invalidated because of a departure from the statutory regulations governing the conduct of the election except in those cases where the legislature has clearly and unequivocally expressed an intent that a specific statutory provision is an essential jurisdictional prerequisite and that a departure therefrom shall have the drastic consequence of invalidity. * * *

* * * * *

"In implicit recognition of the above principles this court has uniformly refused to hold school district consolidation proceedings invalid for irregularities where the determinative election, despite such irregularities, resulted in a free and fair expression of the will of the voters on the merits." (Italics omitted.)[3]

Since there is no evidence that any voter was misled or prejudiced by these defects, the election appears to have been a fair expression of the sentiment of the freeholders of the districts and thus the irregularities which occurred provide no basis to invalidate the consolidation.

Finally, appellants contend that the evidence fails to sustain the trial court's finding that the consolidation was in the best interest of the area affected. In consolidation proceedings the powers exercised by the county superintendent of schools and the commissioner of edu-

---

[3]In re Order of Sammons, County Supt. of Schools, 242 Minn. 345, 349, 65 N. W. (2d) 198, 202.

cation are legislative in character.[4] Well-established rules, recently reiterated, narrowly limit our scope of review.[5]

Appellants claim that the best interests of the areas involved compel joining the districts to the contiguous Hanska district. This district has a valuation of about $600,000 and maintains a small high school having a student body of about 75 students. The year of the trial, 15 students were graduated. It offered no shop, no agricultural courses, no languages, and minimum mathematics, and was generally regarded as a noncomprehensive high school having the sole educational objective of preparing a student to enter college. In contrast, the New Ulm district has a valuation of over $6,000,000; its high school offers all of the courses mentioned and many electives; and it is one of the hundred high schools in the state, out of some 450, which are accredited by and hold membership in the North Central Association of Colleges and Secondary Schools. The only apparent disadvantage in the consolidation plan is that there is a distance of 10 or 11 miles separating the common districts and the New Ulm district, and about a half hour's travel time is required for students going to the New Ulm schools from certain points in the common school districts.

We are cognizant of the understandable discontent of those living near the Hanska district who have developed ties with its school. However, we believe that the record, including the facts recited, when viewed in the light of the rules governing this review, leaves us no choice but to conclude that the evidence fully justified the finding of the trial court that the administrative determination serves the best interest of the area affected and was neither fraudulent, oppressive, arbitrary, nor unreasonable.

Affirmed.

---

[4]School Dist. No. 37 v. County of Yellow Medicine, 174 Minn. 380, 219 N. W. 456.

[5]In re Appeal of Lego v. Rolfe, 268 Minn. 483, 129 N. W. (2d) 811.