TRAVERTINE CORPORATION,
Appellant,

v.

LEXINGTON–SILVERWOOD, a
Minnesota Limited Partnership,
Respondent.

No. A03–210.

Supreme Court of Minnesota.

July 1, 2004.

Rehearing Denied July 22, 2004.

Donald R. McNeil (# 200840), Steven F. Buterin (# 248642), Coleman, Hull & Van Vliet, PLLP, Minneapolis, MN, for Travertine Corporation.

Curtis D. Smith (# 102313), Peter A. Koller (# 150459), Moss & Barnett, Minneapolis, MN, for Lexington–Silverwood.

## OPINION

ANDERSON, RUSSELL A., Justice.

We are asked to determine whether a nonassignment clause precludes assignment of the right to payment under a contract if the clause does not explicitly limit, beyond the express nonassignment terms contained in that clause, the power of assignment, or provide that any purported assignment shall be invalid or void. We hold that such a nonassignment clause does preclude assignment, and therefore reverse the court of appeals' decision to the contrary.

The underlying dispute in this case concerns the claim of respondent Lexington–Silverwood, L.P. that it was assigned the compensation that James E. Lennon was due under a "management agreement" to which Lennon, George Berkey, and appellant Travertine Corporation, a real-estate development venture, were parties. In August 1989, Travertine entered into the management agreement with Lennon and Berkey. The agreement provides that Lennon and Berkey would serve as the board of directors and officers of Travertine and would "provide all of the management services necessary to undertake the land acquisition, assembly and disposition" described in Travertine's business plan. Lennon subsequently served as President of Travertine. In return for their services, Travertine agreed to pay Lennon and Berkey a percentage of its net profits.

The management agreement further provides that if Travertine terminated the agreement, Lennon and Berkey would be entitled to compensation for their services up to the termination date. Disputes under the agreement are subject to an arbitration clause, which provides that "[i]n the event of a dispute between the parties with reference to the interpretation of this Agreement or their rights hereunder, the same shall be submitted to arbitration." The nonassignment clause at issue provides in its entirety that:

> This Agreement shall be binding on the parties and their respective personal representatives, successors and assigns; provided, however, that the rights and obligations of Berkey/Lennon shall not be assignable except that Berkey may

assign to Lennon or Lennon assign to Berkey such rights and obligations.

In February 1992, Berkey assigned all of his rights under the management agreement to Lennon. In May 1996, Lexington–Silverwood obtained a judgment against Lennon in a matter unrelated to Travertine. In settlement of the judgment, Lennon purported to assign to Lexington–Silverwood his rights to compensation under the management agreement with Travertine. The assignment agreement[1] provided that Lexington–Silverwood "has an equitable assignment of Lennon's stock in Travertine" and that "Lennon agrees to transfer all other compensation, including anything due Lennon from his management agreement with Travertine."

On November 12, 1999, Travertine's Board of Directors terminated Lennon as President and "suspended" the management agreement. Not having secured a willing and able buyer for the real estate it had acquired, Travertine cancelled the management agreement on January 15, 2001. Lexington–Silverwood filed a demand for arbitration in March 2002, alleging that, as Lennon's assignee, it was entitled to the compensation due him under the management agreement and that Travertine had refused to pay it. Travertine moved the district court for an order staying arbitration. The court determined that Lennon's transfer of his right to compensation was not a valid present assignment, concluding that even if the assignment was enforceable, it was only an assignment of Lennon's right to receive compensation and not his right to demand arbitration. The court granted Travertine's motion to stay arbitration, but the court of appeals reversed. We granted Travertine's petition for further review, and now reverse.

I.

■ There is no dispute in this case that Lennon attempted to transfer his right to receive compensation under the management agreement, in violation of the anti-assignment clause; the issue before us is what effect that assignment should be afforded. Contract rights are generally assignable, except where the assignment is (1) prohibited by statute;[2] (2) prohibited by contract; (3) or where the contract involves a matter of personal trust or confidence. *Vetter v. Sec. Cont'l Ins. Co.*, 567 N.W.2d 516, 521 (Minn.1997); *Wilkie v. Becker*, 268 Minn. 262, 267, 128 N.W.2d 704, 707 (1964); *see also Klotz v. Jeddeloh*, 201 Minn. 355, 358, 276 N.W. 244, 245 (1937); 6 Am.Jur.2d *Assignments* §§ 17, 28 (1999).

---

1. This agreement was also entitled "Management Agreement," but to avoid confusion, we simply refer to it as the "assignment agreement."

2. We are cognizant of the fact that Minn.Stat. § 181.05 (2002) provides that an assignment of unearned wages or salary is void:

No assignment, sale, or transfer, however made or attempted, of any unearned wages or salary shall be in any manner valid or effectual for the transfer of any salary or wages to be earned or accruing after the making of such assignment, sale, or transfer, unless the person, firm or corporation from whom such wages or salary are to accrue shall consent thereto in writing. Any employer or agent of such employer accepting or charging any fee or commission for collecting the amount due on any such assignment, sale, or transfer shall be deemed guilty of a misdemeanor.

The record before us, however, is inconclusive with regard to (1) Lennon's employment relationship with Travertine; and (2) the time period over which Lennon earned the compensation he purported to assign to Lexington–Silverwood. For these reasons, we decline Travertine's invitation to decide this case based upon application of Minn.Stat. § 181.05.

■ Contract interpretation is a question of law which we review de novo. *Employers Mut. Cas. Co. v. A.C.C.T., Inc.*, 580 N.W.2d 490, 493 (Minn.1998). The primary goal of contract interpretation is to determine and enforce the intent of the parties. *Motorsports Racing Plus, Inc., v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (Minn.2003). Where there is a written instrument, the intent of the parties is determined from the plain language of the instrument itself. *Metro. Sports Facilities Commn. v. General Mills*, 470 N.W.2d 118, 123 (Minn.1991). We have consistently stated that when a contractual provision is clear and unambiguous, courts should not rewrite, modify, or limit its effect by a strained construction. *Telex Corp. v. Data Products Corp.*, 271 Minn. 288, 295, 135 N.W.2d 681, 687 (1965); *Anderson v. Twin City Rapid Transit Co.*, 250 Minn. 167, 178, 84 N.W.2d 593, 601 (1957); *Grimes v. Toensing*, 201 Minn. 541, 545, 277 N.W. 236, 238 (1938).

■ The primary purpose of clauses prohibiting the assignment of contract rights is to protect the contracting party from dealing with parties he has not chosen to do business with. *See generally* 6 Am.Jur.2d *Assignments* § 29 (1999). Travertine contends that the management agreement prohibits the assignment of the rights and obligations of the parties. Lexington-Silverwood argues that the antiassignment clause in the management agreement only creates a covenant not to assign because it does not specifically state that any attempted assignment will be "void" or "invalid," or that Lennon "lacks the power" to assign the contract. Travertine counters that the use of these terms is not required because the contract expressly prohibits Lennon from assigning his rights.

■ Lexington–Silverwood contends that the assignment should be upheld despite the antiassignment clause because the modern trend of authority disfavors contractual prohibitions on assignments, especially in this case where the clause failed to expressly make the assignment void. Lexington–Silverwood urges us to adopt the default interpretive rules provided by the Restatement (Second) of Contracts:

(1) Unless the circumstances indicate the contrary, a contract term prohibiting assignment of "the contract" bars only the delegation to an assignee of the performance by the assignor of a duty or condition.

(2) A contract term prohibiting assignment of rights under the contract, unless a different intention is manifested,

(a) does not forbid assignment of a right to damages for breach of the whole contract or a right arising out of the assignor's due performance of his entire obligation;

(b) gives the obligor a right to damages for breach of the terms forbidding assignment but does not render the assignment ineffective;

(c) is for the benefit of the obligor, and does not prevent the assignee from acquiring rights against the assignor or the obligor from discharging his duty as if there were no such prohibition.

Restatement (Second) of Contracts § 322 (1981).

■ We will not adopt a provision of a Restatement of the Law if our precedent is to the contrary and we believe that our precedent still reflects the proper rule of law. *See Coyle v. Richardson-Merrell, Inc.*, 526 Pa. 208, 584 A.2d 1383, 1385

(1991) ("Where the facts of a case demonstrate that the [Restatement] rule outruns the reason, the court has the power, indeed the obligation, to refuse to apply the rule, a power for the most part unavailable where the rule is legislatively ordained. Were it otherwise, our recognition of the work of the American Law Institute would approach an improper conferral of legislative authority.").

■■■■ In this case, we need not adopt the default interpretive rules provided by the Restatement (Second) of Contracts § 322 because our precedent that parties may agree that their contractual rights and obligations are not to be assigned is well-established. *Vetter,* 567 N.W.2d at 521; *Wilkie,* 268 Minn. at 267, 128 N.W.2d at 707. In our 1964 decision of *Wilkie v. Becker,* we explained

> The general rule is that the right to receive money due or to become due under an existing contract may be assigned even though the contract itself may not be assignable. A contract to pay money may be assigned by the person to whom the money is payable, *unless there is **something** in the terms of the contract manifesting the intention of the parties that it shall not be assigned.*

*Wilkie,* 268 Minn. at 267, 128 N.W.2d at 707 (quoting 6 Am.Jur.2d *Assignments* § 16) (emphasis added). The language emphasized above is crucial. We did not require that the parties use specific terms to preclude assignment, but merely required the parties to include *something* expressing their intent that the contract not be assignable. Because there was nothing in the terms of the contract manifesting the intention of the parties that it was not to be assigned, we upheld the assignment. *Wilkie,* 268 Minn. at 268, 128 N.W.2d at 708. We rearticulated this same general rule in our 1997 decision of *Vetter v. Security Continental Insurance:*

As a general rule, *and in the absence of a contractual provision to the contrary,* an obligor on a contract may assign all beneficial rights to another, or may delegate his or her duty to perform under the contract to another, without the consent of the obligee.

567 N.W.2d at 521 (emphasis added). Once again, we did not require specific terms or magic words, but merely some indication that the parties intended that the contract not be assigned.

■■■■ Here the contract provides in relevant part that *"the rights and obligations of Berkey/Lennon shall not be assignable."* (Emphasis added.) It is a well-worn maxim that use of the term "shall" reflects a mandatory imposition. *Ind. Sch. Dist. No. 561 v. Ind. Sch. Dist. No. 35,* 284 Minn. 426, 436, 170 N.W.2d 433, 440 (1969). The inclusion of the language quoted above satisfies the requirement that the parties include something in the terms of the contract manifesting the intention of the parties that it shall not be assigned. *Vetter,* 567 N.W.2d at 521; *Wilkie,* 268 Minn. at 267, 128 N.W.2d at 707. Therefore, we hold that the contract between Travertine and Lennon is nonassignable.

## II.

Even under the so-called "modern" Restatement view, however, Lennon's purported assignment is void. The crucial phrase in section 322 is "unless a different intention is manifested." If the contract shows an intent by the parties to limit both delegations of duties and assignment of rights, and specifically states who is bound by the assignment prohibition, then the interpretive default rules are inapplicable. We acknowledge that there is a split of authority regarding the appropriate standard for determining when the parties have sufficiently manifested an intention to prohibit the power of assignment. *See*

*Rumbin v. Utica Mut. Ins. Co.*, 254 Conn. 259, 757 A.2d 526, 531–36 (2000) (collecting cases and discussing the various approaches taken).

Some courts that have interpreted Restatement (Second) of Contracts § 322 have generally distinguished between a party's "right" to assign and a party's "power" to assign. *See, e.g., Bel–Ray Co. v. Chemrite Ltd.*, 181 F.3d 435, 442 (3d Cir.1999); *Cedar Point Apartments, Ltd. v. Cedar Point Inv. Corp.*, 693 F.2d 748, 754 (8thCir.1982). As reflected by section 322(2)(b), the law presumes that "contractual provisions limiting or prohibiting assignments operate only to limit a parties' right to assign the contract, but not their power to do so, unless the parties manifest an intent to the contrary with specificity." *Bel–Ray Co.*, 181 F.3d at 442 (citations omitted). In its 1982 decision of *Cedar Point Apartments, Ltd. v. Cedar Point Inv. Corp.*, the Eighth Circuit held that the following language served "only as a restriction on the delegation of duties, and not on the assignment of rights":

> Purchaser shall have the right to assign this Agreement to any partnership of which [sic] is a general partner; provided, however, that Purchaser shall have such right of assignment only if such assignee or transferee shall in writing expressly assume and agree to perform and discharge each and every obligation and liability of Purchaser set forth in this agreement.

693 F.2d at 752.

Likewise, in its 1999 decision of *Bel–Ray Co. v. Chemrite Ltd.*, the Third Circuit held that the following contract language did not limit the assignor's "power" to assign: "Agreement and the obligations and rights under this Agreement will not be assignable by [Chemrite] without express prior written consent of Bel–Ray, which may be withheld at the sole discre-

tion of Bel–Ray." 181 F.3d at 442–43. According to the *Bel–Ray* court, in order to limit the parties' power to assign, "the assignment provision must generally state that nonconforming assignments (i) shall be 'void' or 'invalid,' or (ii) that the assignee shall acquire no rights or the nonassigning party shall not recognize any such assignment." *Id.* at 442 (citations omitted). "In the absence of such language, the provision limiting or prohibiting assignments will be interpreted merely as a covenant not to assign * * *." *Id.* Breach of the covenant may give rise to damages, but it will not render the assignment invalid or unenforceable. *Id.* Finally, the Supreme Court of Oklahoma has held that the following contract language "clearly and unambiguously precludes assignment": "Plaintiffs agree that they maintain no right to * * * have *power* to sell, mortgage, encumber, or anticipate the future payments, or any part thereof by assignment or otherwise." *In re Kaufman*, 37 P.3d 845, 855 (Okla.2001) (emphasis added).

■ The Seventh Circuit, however, has rejected the requirement of using such "magic words," classifying them as "empty verbiage." *Bank of America, N.A. v. Moglia*, 330 F.3d 942, 948 (7th Cir.2003) (applying law of Illinois, which had adopted Restatement (Second) of Contracts § 322). We agree with the Seventh Circuit. We will not impose formulaic restraints on the language that contracting parties may employ to craft an anti-assignment clause that limits the power to assign. We believe the best approach is to simply apply the plain meaning of the words employed by the parties. When a contract prohibits assignment in very specific and unmistakable terms, any purported assignment is void. Although requiring the use of specific language, such as "void" or "invalid"—as mandated by the Third Circuit in *Bel–Ray*—would help to resolve

any conceivable ambiguity about whether the parties intended to limit the "power" to assign rather than the "right" to assign, it is difficult to identify a clearer way to communicate an intent to deny a party the power to assign than to expressly say so.[3]

With the exception that Berkey may assign to Lennon and Lennon may assign to Berkey, the management agreement provides that *"the rights and obligations of Berkey/Lennon shall not be assignable."* (Emphasis added.) We hold that the anti-assignment clause is a valid and enforceable term of the management agreement, and that the parties intended to deny Lennon the power to assign his rights under the management agreement to anyone but Berkey. Therefore, Lennon's purported assignment of his right to compensation to Lexington–Silverwood is void.

Reversed.

3.  Other courts have taken this approach, and given effect to contract provisions that specifically prohibit the assignment of ones right to receive money due under a contract. *See, e.g., Liberty Life Assurance Co. of Boston v. Stone Street Capital, Inc.,* 93 F.Supp.2d 630, 638 (D.Md.2000) (upholding anti-assignment provision in structured settlement agreement in spite of fact that the provision did not contain the words "void" or "invalid."); *Grieve v. General American Life Ins. Co.,* 58 F.Supp.2d 319, 321 (D.Vt.1999) (same); *Johnson v. First Colony Life Ins.,* 26 F.Supp.2d 1227, 1229–30 (C.D.Cal.1998) (same); *Parrish Chiropractic Centers, P.C. v. Progressive Cas. Ins. Co.,* 874 P.2d 1049, 1055 (Colo.1994) (upholding anti-assignment provision as preventing any effective assignment because "[w]hen a contractual provision is clear and unambiguous, courts should neither rewrite it nor limit its effect by a strained construction."); *CGU Life Insurance Co. v. Singer Asset Finance Co.,* 250 Ga.App. 516, 553 S.E.2d 8, 15 (2001) (upholding anti-assignment provision even though structured settlement agreement failed to make assignments expressly void or otherwise ineffective); *J.G. Wentworth S.S.C. v. Callahan,* 256 Wis.2d 807, 649 N.W.2d 694, 696 (2002) (refusing to require "magic" words in order to enforce a nonassignability clause).