*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0882**

20/20 Group, Inc. d/b/a Opportunities in Business,
Appellant,

vs.

Hydeaway II, LLC, et al.,
Respondents.

**Filed February 23, 2015
Reversed and remanded
Johnson, Judge**

Hennepin County District Court
File No. 27-CV-13-15977

Ronald J. Walsh, Walsh Law, Bloomington, Minnesota (for appellant)

Patrick W. Michenfelder, Frederick M. Young, Gries, Lenhardt, Michenfelder, Allen, PLLP, St. Michael, Minnesota (for respondents)

Considered and decided by Reyes, Presiding Judge; Worke, Judge; and Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

20/20 Group, Inc., commenced this action to recover a commission that it allegedly earned by brokering the sale of a parcel of real estate. The district court granted the defendants' motion to dismiss on the ground that 20/20 Group's amended complaint does not state a claim upon which relief can be granted. We conclude that the amended

complaint sufficiently alleges facts that state a claim for relief. Therefore, we reverse and remand.

## FACTS

The facts stated below are excerpted from 20/20 Group's amended complaint, two documents attached to the amended complaint, and a document referenced in the amended complaint and, for purposes of this opinion, are assumed to be true.

Hydeaway II, LLC, previously owned an MGM Wine & Spirits liquor store that is located in the city of Maple Grove. Hydeaway III, LLC, previously owned the real estate at which the liquor store conducts its business. Todd Hyde is the sole owner of both Hydeaway II and Hydeaway III. 20/20 Group is a business broker and a real-estate broker.

In February 2011, Hyde and Hydeaway II contracted with 20/20 Group to broker a sale of the liquor-store business. Hyde executed a one-page written agreement, entitled "Standard Listing Agreement," which appears to have been prepared by 20/20 Group. The standard listing agreement is attached to the amended complaint as Exhibit A. The standard listing agreement states that the anticipated sales price of the business is $2,250,000. The standard listing agreement further states that, upon a sale of the liquor-store business, 20/20 Group would receive a commission equal to ten percent of the first $500,000 of the sales price plus two percent of the remainder of the sales price.

In September 2011, Hydeaway II sold the business to Montecore, LLC, for $1,950,000. Consistent with the standard listing agreement, Hyde paid 20/20 Group a commission of $79,000.

2

On the same day as the sale of the liquor-store business, Hydeaway III and Montecore entered into a written agreement that gave Montecore an option to purchase the real estate at which the liquor-store business operates. The agreement is not attached to the amended complaint but is referenced in it. The agreement, entitled "Option Agreement," consists of nine single-spaced pages and appears to have been prepared by an attorney. Hyde signed the option agreement on behalf of Hydeaway III; Robert R. Pederson signed on behalf of Montecore. In article I, paragraph 1, Hydeaway III granted to Montecore "the exclusive right and privilege of purchasing" the real estate for a two-year period. In article II, paragraph 2(a), the option agreement provides, "Purchaser [i.e., Montecore] may utilize a separate legal entity to purchase the Property."

On the same day as the sale of the liquor-store business and the execution of the option agreement, Hyde and 20/20 Group entered into another written agreement for brokerage services, a one-page, three-paragraph agreement, entitled "Commission Agreement," which does not appear to have been prepared by an attorney. The commission agreement is attached to the amended complaint as Exhibit B. The first paragraph of the commission agreement provides as follows: "The undersigned Seller, and Broker, hereby agree that Seller will pay Broker two (2) percent commission if Bob Pederson or Montecore LLC, Buyer, purchases the building at 16475 96th Ave North Maple Grove, MN 55311 within 24 months from today."

20/20 Group alleges that, within two years, Montecore exercised its purchase option in a manner that allowed Spirits 1, LLC, to acquire the real estate that is described in the commission agreement. Specifically, 20/20 Group alleges in paragraph 6 of the

amended complaint that "[Montecore], or [Montecore] and a third party, exercised [Montecore]'s option to purchase the land and building from Hydeaway III, LLC in early 2013," at a price of $2,100,000. 20/20 Group alleges further in paragraph 19 of the amended complaint that "Montecore, LLC as 'Buyer' exercised its purchase option with Hydeaway III, LLC" and that "Montecore, LLC and Spirits 1, LLC (a Minnesota Limited Liability Corporation managed by Robert Pederson) exercised [Montecore]'s purchase option jointly and cooperatively to effectuate the purchase of the real estate and the acquisition of the fee title interest." 20/20 Group demanded payment of a commission on the sale of the real estate, but Hyde refused.

In August 2013, 20/20 Group commenced this action to recover damages for Hyde's failure to pay a commission on the sale of the real estate. 20/20 Group's amended complaint alleges three breach-of-contract claims: (1) that Hydeaway II breached the February 2011 standard listing agreement; (2) that Hyde breached the February 2011 standard listing agreement; and (3) that Hyde breached the September 2011 commission agreement. 20/20 Group has not alleged a claim against Hydeaway III.

In December 2013, Hyde and Hydeaway II moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted. *See* Minn. R. Civ. P. 12.02(e). In March 2014, the district court granted the motion. The district court administrator entered judgment in favor of Hyde and Hydeaway II (hereinafter respondents). 20/20 Group appeals.

4

**D E C I S I O N**

20/20 Group argues that the district court erred by granting respondents' motion to dismiss the amended complaint for failure to state a claim upon which relief can be granted. 20/20 Group seeks reversal only with respect to the September 2011 commission agreement, which is the basis of count 3 of the amended complaint. Accordingly, we will confine our review to the district court's dismissal of count 3.

A district court may dismiss a complaint if it fails "to state a claim upon which relief can be granted." Minn. R. Civ. P. 12.02(e). A district court must deny a motion to dismiss pursuant to rule 12.02(e) "if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded." *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 603 (Minn. 2014). Stated a different way, "'a pleading will be dismissed only if it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist which would support granting the relief demanded.'" *Id.* at 602 (quoting *Northern States Power Co. v. Franklin*, 265 Minn. 391, 395, 122 N.W.2d 26, 29 (1963)). This court applies a *de novo* standard of review to a district court's ruling on a motion to dismiss pursuant to rule 12.02(e). *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn. 2003).

In reviewing the sufficiency of a complaint upon a motion to dismiss, a district court must consider "only the facts alleged in the complaint, accepting those facts as true and must construe all reasonable inferences in favor of the nonmoving party." *Hebert v. City of Fifty Lakes*, 744 N.W.2d 226, 229 (Minn. 2008) (quotations omitted). A district court also must consider any documents that are attached to the complaint. *Hardin Cnty.*

5

*Sav. Bank v. Housing & Redevelopment Auth. of City of Brainerd*, 821 N.W.2d 184, 192 (Minn. 2012) (citing Minn. R. Civ. P. 10.03). In addition, a district court should consider any documents that are referenced in a complaint but not attached to the complaint. *Northern States Power Co. v. Metropolitan Council*, 684 N.W.2d 485, 490-91 (Minn. 2004). In a case involving a written agreement that is referenced in a complaint but not attached to the complaint, the written agreement is treated like an attachment so long as "the complaint refers to the contract and the contract is central to the claims alleged." *In re Hennepin Cnty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 497 (Minn. 1995). In that event, the district court should consider the entirety of the document, not just the portions referenced. *See id.*[1]

20/20 Group alleges a breach-of-contract claim in count 3 of its amended complaint. To establish a claim of breach of contract, a plaintiff must prove three elements: "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the

---

[1]In their brief, respondents incorrectly assert that the district court converted their motion to dismiss into a motion for summary judgment. *See* Minn. R. Civ. P. 12.02. Consistent with that view, respondents repeatedly cite documents that 20/20 did not attach to or reference in the amended complaint but that respondents submitted to the district court in conjunction with their motion to dismiss. A district court converts a motion to dismiss into a motion for summary judgment only if the district court "evaluates materials outside the pleadings"; a district court does not convert a motion to dismiss into a motion for summary judgment if the district court confines its analysis to the complaint, its attachments, and documents referenced in the complaint. *Martens v. Minnesota Mining & Mfg. Co.*, 616 N.W.2d 732, 739 n.7 (Minn. 2000). In this case, the district court did not mention in its order and memorandum any document that was not attached to the amended complaint. Thus, the district court did not convert the motion to dismiss into a motion for summary judgment. Accordingly, we apply the procedural law applicable to a motion to dismiss.

6

contract by defendant." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011). Only the second element is at issue in this appeal. The key question is whether 20/20 Group has sufficiently alleged the existence of a condition precedent of Hyde's obligation to pay a commission. Answering this question requires us to interpret the parties' written agreement and to examine 20/20 Group's allegations.

The commission agreement provides that Hyde will pay 20/20 Group a brokerage commission "if Bob Pederson or Montecore . . . purchases the building [occupied by the liquor store] within 24 months." "The primary goal of contract interpretation is to determine and enforce the intent of the parties." *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 271 (Minn. 2004). The corollary to this principle is that "the intent of the parties is determined from the plain language of the instrument itself," so long as the agreement is unambiguous. *See id.* A contract is ambiguous only if it is reasonably susceptible of more than one interpretation. *Sayer v. Minnesota Dep't of Transp.*, 790 N.W.2d 151, 157 (Minn. 2010). In this case, the district court determined that the commission agreement is unambiguous. 20/20 Group does not take a position as to whether the commission agreement is ambiguous or unambiguous. Respondents asserted in their brief that the commission agreement is unambiguous but asserted at oral argument that it is ambiguous. We consider the commission agreement to be unambiguous in its requirement that either Pederson or Montecore must purchase the property before a commission is owed.

In paragraph 6 of the amended complaint, 20/20 Group alleges that Montecore, either singularly or in collaboration with a third party, "exercised [its] option to purchase

7

the land and building from Hydeaway III," within the applicable two-year period. In paragraph 19, 20/20 Group alleges in more detail that "Montecore . . . exercised its purchase option" and that "Montecore, LLC and Spirits 1, LLC . . . exercised [Montecore]'s purchase option jointly and cooperatively to effectuate the purchase of the real estate and the acquisition of the fee title interest."

The district court reasoned that the commission agreement states that 20/20 Group would earn a commission only if either Pederson or Montecore were to purchase the property. The district court concluded that 20/20 Group's claim fails because neither Pederson nor Montecore purchased the property. The district court essentially determined that, as a matter of law, the commission agreement does not give 20/20 Group a contractual right to a commission on a sale of the property, regardless of the means by which the property was conveyed to Spirits 1.

Our *de novo* review of the amended complaint leads to the conclusion that 20/20 Group has sufficiently alleged that Montecore purchased the property that is referenced in the commission agreement. The amended complaint may not allege the simplest or most straightforward or most common type of purchase of real property. But 20/20 Group has alleged that Montecore "exercised [its] option to purchase" the property and that Montecore and Spirits 1 "exercised [Montecore]'s purchase option jointly and cooperatively to effectuate the purchase of" the property. Those portions of the amended complaint effectively allege that Montecore purchased the property. Granted, 20/20 Group did not provide details of the alleged purchase, but the lack of detail is not unusual given that the subject matter is a transaction to which 20/20 Group was not a party, and

8

the lack of detail is not fatal at the pleading stage. 20/20 Group should be allowed to discover evidence that may be introduced at trial to prove that Montecore purchased the property, as the term "purchase" was understood by the parties when they entered into the commission agreement. *See Travertine Corp.*, 683 N.W.2d at 271.

20/20 Group's amended complaint is sufficient considering only its text and its attachments, but its allegations are bolstered by its reference to the option agreement. Article I, paragraph 1, of the option agreement states that Montecore had "the exclusive right and privilege of purchasing" the property for a two-year period. In light of this provision, 20/20 Group may seek to establish that another company could not have purchased the property during the two-year option period, which might cause a fact-finder to infer that Montecore purchased the property. In addition, article II, paragraph 2(a), of the option agreement recognizes that Montecore "may utilize a separate legal entity to purchase the Property." In light of this provision, 20/20 Group may introduce evidence that both Hyde and Montecore understood that Montecore was purchasing the property, despite the presence of another business entity, which might allow a fact-finder to infer that, notwithstanding the role of Spirits 1, Montecore purchased the property. The district court did not mention the option agreement in its order and memorandum, but we consider it to be part of the amended complaint because the option agreement was referenced in it, is central to 20/20 Group's claim, and was made part of the record of the motion to dismiss. *See Metropolitan Council*, 684 N.W.2d at 490-91; *Hennepin Cnty. 1986 Recycling Bond Litig.*, 540 N.W.2d at 497.

To reiterate, the central question on a motion to dismiss pursuant to rule 12.02(e) is whether "it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded," *Walsh*, 851 N.W.2d at 603, and the motion should be granted "'only if it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist which would support granting the relief demanded,'" *id.* at 602 (quoting *Franklin*, 265 Minn. at 395, 122 N.W.2d at 29). At this stage of the case, we are unable to say with certainty that, after an appropriate opportunity for discovery, 20/20 Group will be unable to muster the evidence necessary to prove the claim pleaded in count 3 of the amended complaint. Thus, the district court erred by granting Hyde's motion to dismiss 20/20 Group's amended complaint with respect to count 3.

**Reversed and remanded.**