*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1922**

Liza A. Robson, Trustee of The Ann S. Fischer
Living Trust u/d/t February 2, 1995, et al.,
Appellants,

vs.

The Economic Development Authority in
and for the City of Elk River,
Respondent.

**Filed August 10, 2015
Affirmed
Halbrooks, Judge**

Sherburne County District Court
File No. 71-CV-14-534

Gerald S. Duffy, Kristin L. Kingsbury, Monroe Moxness Berg P.A., Minneapolis, Minnesota (for appellants)

George C. Hoff, Shelly M. Ryan, Hoff, Barry & Kozar, P.A., Eden Prairie, Minnesota (for respondent)

Considered and decided by Reilly, Presiding Judge; Halbrooks, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

Appellant landowners and redevelopers challenge the district court's grant of summary judgment and dismissal of their breach-of-contract claim against respondent

economic development authority, arguing that the district court erred in its interpretation of the contract. We affirm.

**FACTS**

This action arises from an Elk River redevelopment project financed in part by tax-increment financing (TIF). Appellant landowners and redevelopers (collectively redeveloper) contend that they did not receive all of the interest income to which they are entitled under the contract. On cross-motions for summary judgment based on stipulated facts, the district court ruled in favor of respondent economic development authority for the city of Elk River (EDA). The parties agree that there are no genuine issues of material fact, the contract is unambiguous, and the outcome turns on proper interpretation of the contract.

In May 1999, the parties entered into a redevelopment agreement under which redeveloper agreed to construct a shopping center project and a business park project on property located within Elk River TIF District 19. EDA agreed to reimburse redeveloper for certain costs incurred to acquire and prepare the property through an initial payment of $300,000 and issuance of two promissory notes. The initial payment of $300,000 came due after redeveloper had paid at least $300,000 in reimbursable redevelopment costs and a building permit had been issued for initial improvements.

After redeveloper had spent at least $1,415,280 on reimbursable costs, EDA would issue promissory note A (Note A), and after redeveloper spent at least $2,811,000, EDA would issue promissory note B (Note B). The notes were to be repaid out of available tax increment, if any, after redeveloper achieved certain milestones. Note A includes Exhibit

2

B, a payment schedule that includes both principal and interest but does not itemize the breakdown of the two. In the event that redevelopment milestones were not met, EDA could defer 50% of each payment due under Note A.

Article 3 of the redevelopment agreement sets forth the parties' obligations with respect to acquisition and development of the property and reimbursement of costs.

- Section 3.2(i) sets forth milestones based on certificates of occupancy and provides that "[i]t is imperative to [EDA] that the entire Development be developed in a timely manner as a condition precedent to reimbursement."

- Section 3.5(a) details the conditions precedent to payment under the notes, including:

  - "[(ii)]2. If, following completion of the Initial Improvements, Certificates of Occupancy for subsequent phases of the Minimum Improvements have not been obtained when required by the Development Schedule in Section 3.2(i) of this Agreement, then fifty percent (50%) of every subsequent payment to be made under both of the Notes shall be withheld until a Certificate of Occupancy for the Minimum Improvements . . . is obtained. **No interest will accrue on payments deferred for failure to meet the Development Schedule**." (Emphasis added.)

- Section 3.5(b)(i) provides that Note A "will bear simple interest at the rate of eight percent (8%)."

- Section 3.5(b)(iii) provides that interest "will not accrue on any payments deferred due to a default by Redeveloper."

- Section 9.12 provides that "Time is of the Essence."

Under the terms of the redevelopment agreement, EDA issued Note A on August 4, 2000. Note A provides:

- EDA agrees to pay $1,415,280, "together with simple, non-compounded interest from the date of issuance of this Note at the rate of eight percent (8%) per annum, **on the dates . . . and in the amounts . . .set forth [in] Exhibit B**." (Emphasis added.)

3

o Exhibit B to Note A sets forth the following payment schedule:

| YEAR | AMOUNT |
| --- | --- |
| 2001 | 0 |
| 2002 | 0 |
| 2003 | 156,008 |
| 2004 | 339,868 |
| 2005 | 472,395 |
| 2006 | 475,960 |
| 2007 | 480,044 |
| 2008 | 263,388 |
| 2009 | 0 |
| 2010 | 0 |
| 2011 | 0 |

- "All payments made on this Note shall first be applied to accrued and unpaid interest and second, to reduction of the Principal Amount."

The parties agree that the sum of the payments set forth in Exhibit B to Note A is $2,187,663, which "contemplates payment of the Principal Amount of $1,415,280.00 and simple, non-compounded interest."

From December 15, 2003 until July 15, 2008, redeveloper did not complete the minimum improvements in accordance with the development schedule identified in section 3.2(i) of the redevelopment agreement. During this period (the deferral period), EDA withheld 50% of scheduled payments, which redeveloper agrees was proper. The final payment on Note A was scheduled to be made in December 2008, but because of redeveloper's delays and the consequent deferral of payments, EDA made its final payment to redeveloper on July 15, 2009. The parties agree that in total, EDA paid redeveloper $2,239,925.45 under Note A, or $52,262 more than the sum of the payments listed in Exhibit B.

4

On February 20, 2012, redeveloper's legal counsel contacted the city of Elk River's finance director, asserting that an audit had revealed a shortfall in EDA's favor. Redeveloper contended that the redevelopment agreement provided for accrual of interest during the deferral period (due after the deferral period ended), and demanded an additional $132,950.30 under Note A. Redeveloper contended that the contract "does not say there will be no interest on deferred principal," but "no interest was calculated on part of the principal during [the deferral period]." Redeveloper asserted that, "If there were to be no interest paid on principal on any deferred payments, the contract would have so specified."

Two years later, redeveloper commenced an action against EDA, seeking a declaratory judgment that EDA was obligated "to pay all accrued simple interest at all times, even during times of deferred or withheld payments" and claiming damages for breach of contract. EDA answered, denying all claims. The parties agreed to postpone discovery and all other activities in the case until after the district court resolved their cross-motions for summary judgment.

Both parties then moved for summary judgment. The parties agree that the redevelopment agreement and Note A control their respective rights and obligations. EDA argued that the redevelopment agreement and Note A unambiguously provide that no interest accrued during the deferral period.[1] Redeveloper argued that the

---

[1]  In its response to redeveloper's summary-judgment motion, EDA also attempted to recover the $52,262 it had paid under Note A in excess of the payment schedule found in Exhibit B. The district court ruled that EDA was barred from raising an issue outside the

5

redevelopment agreement and Note A unambiguously provide that during the deferral period, simple interest continued to accrue on principal, and later payments by EDA applied first to pay down interest, leaving principal unpaid and continuing to accrue additional interest.

The district court framed the legal issue as whether "the contract['s] stated interest rate continued to accrue on the princip[al] during the period [redeveloper] failed to meet the conditions precedent" and ruled that it did not. The district court found:

> Redeveloper postulates that the Redevelopment Contract placed no monetary consequence on the Redeveloper's failure to meet the deadlines set out in the Agreement other than the temporary delay in payments. This argument undermines the basic intent of the parties and would require this Court to adopt a significantly strained construction of the agreement between the parties while producing an absurd result whereby the Redeveloper would arguably have benefitted monetarily from its failure to meet the express obligations it assumed when entering into the Redevelopment Contract.

The district court observed that the redevelopment agreement contained a "time is of the essence" clause as well as deadlines that were explicitly termed conditions precedent to reimbursement. Further, sections 3.2(i) and 3.2(ii) provide that "No interest will accrue on payments deferred for failure to meet the Development Schedule," and interest "will not accrue on any payments deferred due to a default by Redeveloper." The district court ruled:

> In order to give effect to the condition precedent language in the Redevelopment Contract, and when interpreting the Redevelopment Contract as a whole, including the "time is of

pleadings and denied EDA's request to amend the pleadings to claim this relief. EDA does not challenge this ruling on appeal.

6

the essence" provision, **the Court concludes that the EDA does not owe interest on any of the payments withheld during the Deferral Period**.

(Emphasis added.) Redeveloper now appeals.

## D E C I S I O N

"A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). A district court's grant of summary judgment is reviewed de novo. *Savela v. City of Duluth*, 806 N.W.2d 793, 796 (Minn. 2011). On appeal from summary judgment, this court reviews the record to determine whether there is any genuine issue of fact and whether the district court erred in its interpretation of the law. *Dahlin v. Kroening*, 796 N.W.2d 503, 504 (Minn. 2011). "Absent ambiguity, the interpretation of a contract is a question of law" subject to de novo review. *Roemhildt v. Kristall Dev., Inc.*, 798 N.W.2d 371, 373 (Minn. App. 2011), *review denied* (Minn. July 19, 2011).

The primary goal of contract interpretation is to determine and enforce the intent of the contracting parties. *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (Minn. 2003). When interpreting a written instrument, "the intent of the parties is determined from the plain language of the instrument itself." *Travertine Corp. v. Lexington–Silverwood*, 683 N.W.2d 267, 271 (Minn. 2004). "We read contract terms in the context of the entire contract and will not construe the terms so as to lead to a harsh and absurd result. Additionally, we are to interpret a contract in such a way as to

7

give meaning to all of its provisions." *Brookfield Trade Ctr., Inc. v. Cnty. of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998) (citation omitted). Appellate courts will not rewrite, modify, or limit the effect of a contract provision by a strained construction when the contractual provision is clear and unambiguous. *Travertine Corp.*, 683 N.W.2d at 271.

The resolution of this appeal turns on the terms of Note A and the meaning of section 3.5(a)(ii)(2) of the redevelopment agreement, which provides that, "No interest will accrue on payments deferred for failure to meet the Development Schedule." Redeveloper contends that the redevelopment agreement and Note A clearly and unambiguously provide that 8% interest will accrue on all outstanding principal from the issuance of the note until it has been repaid in full, even when payments are deferred due to redeveloper's failure to meet development deadlines. We disagree.

The district court carefully reviewed the terms of the redevelopment agreement and Note A, recognizing the contract's emphasis on the development schedule and the related provisions that limit interest. The district court reasoned that a ruling that there were no monetary consequences for redeveloper's failure to meet deadlines would undermine the intent of the parties, require a significantly strained construction of the contract, and produce an absurd result whereby redeveloper could benefit monetarily by essentially breaching the redevelopment agreement. The district court's reasoning is sound.

Note A provides that EDA is indebted to redeveloper for no more than $1,415,280.00, "together with simple, non-compounded interest from the date of issuance of this Note at the rate of eight percent (8%) per annum, on the dates . . . and in the

amounts . . . set forth . . . on the payment schedule attached hereto as Exhibit B." Exhibit B provides for a series of payments, which under the redevelopment agreement are subject to the availability of tax increment and to deferral for failure to meet the development schedule.

Reading Note A together with the payment-deferral terms in the redevelopment agreement, including the provision that "no interest will accrue on payments deferred" and multiple provisions addressing timeliness, the parties did not intend for redeveloper to earn interest when the project lagged behind schedule. Giving meaning to all provisions and interpreting the contract to avoid an absurd result, we conclude that the district court properly ruled that interest did not accrue on principal during the deferral period.

**Affirmed.**