*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1061**

In re the Estate of:  Bernice R. Murray
aka Bernice Murray, Deceased

**Filed March 7, 2016
Affirmed
Ross, Judge**

Nicollet County District Court
File No. 52-PR-12-334

Douglas B. Altman, Darron C. Knutson, Altman & Izek, Minneapolis, Minnesota (for appellant)

Rodney J. Mason, Kimberly A. Mason, St. Paul, Minnesota (for respondents Chase and Erin Jonason)

Barbara P. Berens, Carrie L. Zochert, Erin K. F. Lisle, Berens & Miller, P.A., Minneapolis, Minnesota (for respondent Leland Jonason)

Considered and decided by Bjorkman, Presiding Judge; Ross, Judge; and Larkin, Judge.

# U N P U B L I S H E D   O P I N I O N

**ROSS**, Judge

This appeal concerns Michael Pint's attempt to collect on a Hennepin County judgment that he secured against his former business partner, Leland Jonason, by attaching property that Jonason's mother bequeathed to him but that Jonason disclaimed in a Nicollet County probate proceeding. Pint personally guaranteed a line of credit that Jonason

obtained to fund their joint business venture. Jonason defaulted on the resulting loan and Pint paid the lender the default amount. The lender assigned its rights to Pint, and Pint obtained a corresponding judgment against Jonason. Jonason's mother bequeathed property to Jonason, but Jonason disclaimed the inheritance, preventing Pint from attaching it to satisfy the judgment. The Nicollet County District Court denied Pint's motion to invalidate Jonason's disclaimer, rejecting Pint's argument that res judicata and the Hennepin County judgment required it to grant the motion. We hold that res judicata did not obligate the district court to reject Jonason's argument that the guaranty's broad waiver-of-claims provision prevents Pint, *acting as guarantor*, from asserting a claim against Jonason. And we hold that the district court correctly interpreted the waiver to determine that Pint could not, *as guarantor*, assert a disclaimer-invalidating claim against Jonason. We do not address Pint's tardy argument that the waiver provision applies to him only as guarantor but not *as assignee*, because Pint did not make the argument in the district court and he mentions it for the first time in his reply brief on appeal. We therefore affirm.

**FACTS**

Michael Pint and Leland Jonason were partners in a mobile-home park business venture. Pint primarily funded the company and Jonason primarily managed it. Short on operational funds in October 2009, Jonason obtained a line of credit from Central Bank to finance the park's daily expenses, and Pint personally guaranteed the loan. The consequent promissory note grew to $322,200 and came due in October 2012. Jonason failed to pay. Pint paid Central Bank the $322,200 obligation pursuant to his guaranty, and the bank assigned him its rights under the note.

2

Pint then sought recovery from Jonason in the district court in two counties—Hennepin (the contract action) and Nicollet (the probate action). Pint sued Jonason in Hennepin County District Court based on contract principles, seeking to collect on the assigned promissory note that Pint purchased from Central Bank. The district court granted Pint's motion for summary judgment against Jonason in the amount of the note plus interest and attorney's fees, totaling $362,435.15. Jonason's mother, Bernice Murray, died testate, leaving Jonason half the residue of her estate, including Nicollet County real property. Jonason executed and filed with the district court in Nicollet County a disclaimer of his interest in the Nicollet County property. Murray's will redirected the disclaimed property to Chase and Erin Jonason, Leland Jonason's children.

Pint moved the district court in Nicollet County to vacate Jonason's disclaimer in the probate proceeding of Murray's estate. He maintained that the disclaimer was void under Minnesota Statutes section 524.2-1106(b)(4) (2014) because Leland Jonason was insolvent. Chase and Erin Jonason responded that Pint did not have standing to vacate the disclaimer and asserted other defenses. Leland Jonason also responded to Pint's motion, asserting that he was solvent at the relevant time and that, in any event, Pint's guaranty expressly waived any right to any claim against him based on the Central Bank note. At the motion hearing, Pint's counsel argued that res judicata barred Leland Jonason's waiver argument due to the Hennepin County judgment on the Central Bank note.

The Nicollet County District Court denied Pint's motion to vacate the disclaimer. It first held that Pint had standing to challenge the disclaimer. But it determined that Pint's claim was barred by a waiver provision in Pint's guaranty in which Pint agreed as follows:

3

"I [Pint] also waive and relinquish all present and future claims, rights, and remedies against borrower [Leland Jonason] or any other obligated party arising out of the creation or my performance of this guaranty." The district court refused to hold that the doctrine of res judicata entitled Pint to a favorable determination based on the Hennepin County District Court's judgment. Pint appeals the Nicollet County order on the issues of res judicata and its interpretation of the guaranty waiver. Chase and Erin Jonason have filed a notice of related appeal challenging the district court's determination that Pint has standing to challenge the disclaimer's validity.

### D E C I S I O N

### I

We first address Chase and Erin Jonason's challenge to the district court's holding that Pint has standing to contest the disclaimer in the probate proceeding. Because the facts relevant to standing are undisputed, we review the district court's standing determination de novo, as a question of law. *Olson v. State*, 742 N.W.2d 681, 684 (Minn. App. 2007). A party's standing can rest on either of two circumstances: the plaintiff has suffered an injury-in-fact or a statute confers standing. *State by Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 493 (Minn. 1996).

The district court determined that Pint has statutory standing as an "interested person" under Minnesota Statutes section 525.31 (2014) and can contest the disclaimer based on our decision in *In re Estate of Pawlik*, 845 N.W.2d 249, 250 (Minn. App. 2014), *review denied* (Minn. June 25, 2014). We agree that Pint has standing as an "interested person," but under a different provision, specifically, section 524.3-105 (2014).

4

This case is dissimilar to *Pawlik*, where we determined that an heir's judgment creditor had standing to petition the district court to declare that the decedent died intestate and to apportion the estate to the heirs under Minnesota Statutes section 525.31. 845 N.W.2d at 254. That section declares that, when an intestate decedent has been dead for three years, "any interested person" may petition the court to determine the descent of the decedent's property. Minn. Stat. § 525.31. In *Pawlik*, we relied on the probate code's general definition of "interested person" to include "heirs, devisees, children, spouses, creditors, beneficiaries and any others having a property right in or claim against the estate of a decedent, ward or protected person which may be affected by the proceeding." Minn. Stat. § 524.1-201(32) (2014). The definition adds, "The meaning as it relates to particular persons may vary from time to time and must be determined according to the particular purposes of, and matter involved in, any proceeding." *Id.* We held that because the petitioner's judgment could be satisfied by the decedent's property if inherited by the heir, the petitioner was a "creditor or . . . other person having a property right in the decedent's estate." *Pawlik*, 845 N.W.2d at 254.

Here, unlike in *Pawlik*, it is undisputed that the decedent died testate, so our reasoning in *Pawlik* does not control. Pint's motion to vacate Jonason's disclaimer rests instead on statutory provisions codifying the Uniform Disclaimer of Property Interests Act, which nowhere refers to "any interested person" or suggests who may challenge a disclaimer. *See* Minn. Stat. §§ 524.2-1101–1116 (2014).

But Minnesota's probate code offers wider ground on which Pint can establish standing as an "interested person." Particularly, section 524.3-105 provides that "[a]ny

5

interested person in a decedent's estate . . . may petition the court for orders in formal proceedings within the court's jurisdiction including but not limited to those described in this article." Pint filed his petition in the district court in Nicollet County where Murray's will was "in formal proceedings," and Pint is an "interested person" as a judgment creditor of an heir named in that will based on "the particular purposes of, and matter involved in, [the] proceeding." Minn. Stat. § 524.1-201(32). Similar to the petitioner in *Pawlik*, if Pint prevails on his motion to vacate the disclaimer, he may be able to satisfy his judgment using Jonason's interest in the inherited property. *See Pawlik*, 845 N.W.2d at 254. We hold that Pint is an "interested person" under section 524.3-105 and can petition the district court in Murray's probate proceeding. We affirm the district court's holding that Pint has standing to challenge Jonason's disclaimer.

## II

Pint relies on his judgment in the Hennepin County lawsuit and maintains that the district court in Nicollet County was precluded by res judicata from considering whether the waiver-of-all-claims provision in the guaranty bars him from challenging Jonason's disclaimer in the probate proceeding. We review de novo whether res judicata is available for the district court to apply. *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004).

We clarify Pint's res judicata claim as it concerns the related doctrine of collateral estoppel. The terms res judicata (commonly referred to as *claim* preclusion) and collateral estoppel (commonly referred to as *issue* preclusion) are sometimes used interchangeably, but the doctrines are distinct. *Id.* at 837. Res judicata prevents parties from relitigating

6

claims resolved in a final adjudication, even if the later litigation raises new legal theories. *Id*. By contrast, collateral estoppel prevents the litigation of specific legal issues that have been formerly adjudicated. *Id.* A party can rely on res judicata in a later claim only if the later claim involves the "same set of factual circumstances" as the previously adjudicated claim, *see id.* at 840, while a party can rely on collateral estoppel only when the specific issue was resolved in the prior adjudication, *see id.* at 837. Although collateral estoppel potentially applies to more circumstances than res judicata, collateral estoppel requires that the estopped party had a "full and fair opportunity to be heard on the adjudicated issue." *Id.* Res judicata, which tends to apply in fewer circumstances, more broadly prevents litigating issues that either were litigated or that could have been litigated. *See id*. at 840.

The distinction is relevant here, because Pint does not assert collateral estoppel. He expressly raises only res judicata, maintaining that the district court in Nicollet County was bound to disregard any waiver assertion because the district court in Hennepin County had already entered judgment on Pint's damages claim. We therefore will limit our analysis to the doctrine of res judicata.

A four-part test determines whether res judicata is available. Res judicata bars a subsequent claim when "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; [and] (4) the estopped party had a full and fair opportunity to litigate the matter." *Id.* All four elements must be established for res judicata to apply. *Id.*

We agree with the district court that res judicata does not apply here. Pint's res judicata claim fails under the first element. The Hennepin County action involving Jonason's indebtedness to Pint for his payment of the Central Bank note involves different factual circumstances from Pint's motion challenging the validity of Jonason's disclaimer. Each of the claims (that Pint is entitled to judgment for paying Jonason's defaulted loan and that Jonason is entitled to disclaim his bequeathed property) requires evidence that differs from the other.

Pint's Hennepin County contract claim and his Nicollet County motion to vacate Jonason's disclaimer would depend on some of the same evidence, but the factual similarities are insufficient for us to say that the claims are the same or that they constitute the same cause of action. The district court in the contract case entered judgment based on the facts that Jonason failed to pay the Central Bank loan as required by the terms of his line of credit and that Pint made the payment and was assigned the bank's rights on the note. By contrast, to invalidate Jonason's disclaimer in the probate case, Pint would need to produce evidence that Jonason is indebted to Pint and that Jonason was insolvent when his waiver became irrevocable. *See* Minn. Stat. § 524.2-1106(b)(4). Determining insolvency requires evidence about Jonason's assets and liabilities, *see* Minn. Stat. § 524.2-1102(9), and this evidence is irrelevant to the Hennepin County contract claim. The two claims also arose at different times. This is significant because we will not hold that claims arise from the same cause of action if "the right to assert the second claim did not arise at the same time as the right to assert the first claim." *Care Inst., Inc.-Roseville v. County of Ramsey*, 612 N.W.2d 443, 447 (Minn. 2000). The Hennepin County action arose when Pint

8

paid the balance and was immediately assigned the bank's rights in October 2012, three months before Jonason disclaimed his interest in the Nicollet County property.

Because the Hennepin County action and the current action to vacate the disclaimer are not the same claim or cause of action, the first element of res judicata is not met. This alone prevents res judicata from barring Jonason from asserting his waiver-clause argument. We therefore hold that the doctrine does not bar the district court's analysis of the guaranty waiver clause. We do not address any possible application of collateral estoppel because Pint did not raise the issue on appeal and the district court did not consider it. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988).

### III

We turn to the effect of the disputed waiver provision. The guaranty that Pint signed so that Jonason could obtain the line of credit from Central Bank contained a broad waiver provision, stating that the guarantor (Pint) relinquished all claims against the borrower (Jonason). The district court reasoned from the waiver's plain language that Pint agreed to forego any possible claim against Jonason for payment of the loan, precluding Pint from collecting from Jonason. We review the district court's interpretation of a contract de novo. *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 271 (Minn. 2004). We discern the parties' intent from the plain language of the contract. *Id.* If a provision is "clear and unambiguous," we will avoid rewriting, modifying, or limiting its effect. *Id.* We construe guaranties the same way we construe other contracts. *Geneva JPM 2003-PM1, LLC v. Geneva FSCX I, LLC*, 843 N.W.2d 263, 266 (Minn. App. 2014).

Pint's guaranty carries the following definitions: "I" includes the guarantor, and the document identifies Pint as guarantor; "You" means the lender, its successors and assignees, and the document identifies Central Bank as the lender; and "Borrower" refers to Leland Jonason. The guaranty contains a waiver provision spanning two paragraphs. The first paragraph appears to refer to waiving rights that might be held against the bank. The disputed interpretation arises from the second paragraph:

> I [Pint] also waive and relinquish all present and future claims, rights, and remedies against borrower [Leland Jonason] or any other obligated party arising out of the creation or my performance of this guaranty. My waiver includes, but is not limited to, the right of contribution, reimbursement, indemnification, subrogation, exoneration, and any right to participate in any claim or remedy you may have against the borrower, collateral, or other party obligated for borrower's debts, whether or not not [sic] such claim; remedy, or right arises in equity or under contract, statute or common law.

We affirm the district court's decision that the waiver's plain language demonstrates Pint's intent to waive any present or future claims against Jonason arising from Pint's performance of the guaranty. The waiver is broad and clear.

We reject Pint's argument that the waiver reflects the intent merely to prevent Pint from interfering with Central Bank's efforts to collect directly from the borrower. Pint points to the second paragraph's second sentence, and he emphasizes that it lists several possible causes of action including "any right to participate in any claim or remedy you [Central Bank] may have against the borrower." Pint maintains that by referring specifically to Central Bank's rights, the phrase limits the entire provision so as to prevent only Pint's interfering with Central Bank's claims against Jonason. The argument has at

10

least three flaws. First, it ignores the fact that the identified, purportedly limiting phrase is part of a list that begins, "includes, *but is not limited to*." Second, it overlooks the organization of the list, the first part of which concerns Pint's individual "right of" several identified methods of recovery, and then adds also, "and any right to" share in any of the bank's methods of recovery. This separate grouping of the two classes of recovery methods (those implicitly belonging to Pint directly and those belonging to the bank indirectly) belies Pint's argument that there is only a single class. And third, the brief reference to interference with the Central Bank's claims does not expressly or impliedly modify the prior sweeping sentence—"I also waive and relinquish all present and future claims, rights, and remedies against borrower or any other obligated party arising out of the creation or my performance of this guaranty."

We also are not convinced by Pint's next argument that, because Jonason was not an intended beneficiary of the guaranty, he cannot enforce the waiver provision in his defense. Minnesota has adopted the Restatement (Second) of Contracts section 302 (1979), which provides in relevant part as follows:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
> > (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
> >
> > (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*See Cretex Cos. v. Constr. Leaders, Inc.*, 342 N.W.2d 135, 139 (Minn. 1984). "Under this approach, if recognition of third-party beneficiary rights is 'appropriate' and *either* the duty owed *or* the intent to benefit test is met, the third party can recover as an 'intended beneficiary.'" *Id.*

The guaranty is clearly intended to benefit Jonason. If the intent to benefit a third party exists, it must be found in the contract "as read in light of all the surrounding circumstances." *Buchman Plumbing Co. v. Regents of the Univ. of Minn.*, 298 Minn. 328, 334, 215 N.W.2d 479, 483 (1974). A nonparty may be an intended beneficiary even if the contract requires performance to the beneficiary only indirectly. *Hickman v. SAFECO Ins. Co. of Am.*, 695 N.W.2d 365, 370 n.8 (Minn. 2005). The first provision of the guaranty states, "For good and valuable consideration . . . to induce you, at your option, to make loans or engage in any other transactions with borrower from time to time, I absolutely and unconditionally guarantee the full payment of the following debts . . . ." This language reflects the intent to benefit Jonason by inducing Central Bank "to make loans or engage in any other transactions with borrower from time to time." The surrounding circumstances inform us that the guaranty was necessary for Jonason to secure the line of credit that he sought to cover the business's operating expenses. The clear intent was to benefit the borrower.

Finally, Pint argues that the district court's interpretation of the waiver as precluding him from all recovery against Jonason leads to an absurd result. He essentially maintains that the result is unfair; he paid Jonason's debt and the district court would leave him with no recovery. This argument on equitable grounds does not dissuade us from our legal

holding for three reasons. First, we will construe and apply a contract by its plain terms "even if the result is harsh." *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346–47 (Minn. 2003). Second, the district court deciding the probate matter did not determine that Pint cannot recover on his previous judgment; that issue was not before it. Its holding merely determined that Pint's stated arguments do not provide any basis to invalidate Jonason's disclaimer of his inheritance. And third, the argument misses the fact that the guaranty's waiver provision applies only to Pint *as guarantor*; it does not on its face prevent Pint from recovering *as assignee*, having stepped into the bank's shoes and having acquired the bank's collection rights by assignment. Pint seems to recognize this, raising the argument as a ground for reversal in his reply brief and at oral argument. If the position has merit (as it seems to), it defeats Pint's argument that the district court's decision leads to an unfair or absurd result. We of course will not decide the argument or rely on it to reverse the district court's waiver holding, because Pint never made the argument in the district court. *See Thiele*, 425 N.W.2d at 582. And even if he had, because he failed to raise the issue in his initial brief on appeal, he denied the respondents the ability to respond to the argument, and we treat it as waived. *See McIntire v. State*, 458 N.W.2d 714, 717 n.2 (Minn. App. 1990), *review denied* (Minn. Sept. 28, 1990).

Because we hold that the district court properly decided that Pint (as guarantor) waived all recourse from Jonason under the plain language of the guaranty waiver provision (and because Pint failed to argue that the guaranty does not limit his right to pursue a claim as assignee), we need not reach Pint's challenge to the district court's determination about the need for an evidentiary hearing on whether Jonason was insolvent

at the relevant time. We also need not address Chase and Erin Jonason's unclean-hands argument.

**Affirmed.**